50556. LOGAN et al. v. THE STATE.

PANNELL, Presiding Judge.

This is an appeal from the overruling of a joint motion of six defendants to suppress alleged evidence seized in a search of the premises of Ernest Logan and his wife, Thelma, and from a search of the four other defendants, Frank Glover, Wilbur Mitchum, Annie Laura Hollingshed and George Ray Carson. The affidavit upon which the warrant was based was typed in on a printed form and each page was sworn to. The premises and persons to be searched were described as "2119 Third Avenue, which is a wood frame house located next to a vacant lot, occupied by a big fat colored male by the name of Logan, and his wife by the name of Thelma Logan. Also see list below of cars to be searched that come to the above mentioned residence, in the City of Macon, Bibb County Georgia." The property to be seized was described as "Lottery (Bug) & Money," described as contraband. The facts were as follows: "On 5 July 1974 at approximately 9 p.m. an informer came to the Detective Office and talked with Detective J. L. Dixon and Frank Beni. This informer has given information to the affiant in the past that has led to the arrest and conviction of two defendants and has also given information to the Detective Office which led to the arrest and conviction of a murder suspect. This informant has stated to Det Dixon and the affiant that between the hours of 10:30 and 11 A.M. Logan who is a big fat colored male approximately 5' 10" every day (Monday thru Friday) goes to the restaurant on the corner of Broadway & Mulberry and owner of which is B. B. McElroy and picks up the Lottery tickets and the money that is being placed, then at approximately 11:15 A.M. Logan goes to the area of the 1100 block of Broadway and picks up some more tickets. Then Logan returns to the corner of Broadway & Mulberry and picks up any tickets which he has missed. Between the hours of 11:30 and

12:00 A.M. Logan takes all of his pick-ups and brings them to the above mentioned address which is his home.

"On 8 July 1974 Detective Beni & Officer Dial went to observe the activity that goes on, at the resident of Thelma Logan, 2110 Third Avenue. In the vacant lot next to the above mentioned residence was a 1959 White Chevrolet, tag No. EIY 379, issued to Earnest Logan Jr., of 2119 Third Avenue. On 8 July 1974 at approximately 10:00 A.M. Det Beni and Officer Dial went to observe the corner of Broadway & Mulberry. At 10:25 A.M. a Dk blue 64 Chevrolet with one colored male in it went west down Mulberry then east on Mulberry to Broadway and south to the 6 or 700 block of Broadway. At 10:40 A.M. on the 8 July 1974 the Chevrolet returned to Broadway & Mulberry, the colored male got out of the automobile and went into Eddies Place then into the Liquor Store and then into Macs Place on the corner of Broadway & Mulberry, and stayed for approximately 12 minutes in each place the colored male went into. At the time the c/m was in Macs Place he pretended that he shook hands and while shaking, something was in their hands that was handed to him and he put it in his pocket. Logan shook hands with 3 c/m and on all three occasions he shook hands and then put something in his pocket. Then a colored male in a black shirt escorted Logan to his car and they talked for a short while, then the blue Chevrolet went east on Mulberry to Broadway and south to the 600 block, at this time it was 11:07 A.M. Logan spent most of his time in Eddies Place.

"On 9 July 1974 at approximately 10:00 A.M. there was not a person in sight on the corner of Broadway & Mulberry in front of Macs Place. On 9 July 1974 at 10:45 A.M. the dark blue Chevrolet parked on the corner near the Macon Hotel and walked across the street into Macs Place he went in the back door, a few minutes later seven colored males and colored females came out the front door and Logan then came out the back door. Logan then went on Mulberry into the Liquor Store and stayed a short while then came out and went down Broadway midway in the block and five colored males and a colored female came out and gathered around Logan.

"On 10 July 1974 at approximately 10:02 A.M. the

dark blue Chevrolet returned to Broadway and Mulberry and the c/m went into Macs Place and stayed a short time and then came out. At this time the officers noticed three colored males in the park one had a bunch of papers in his right rear pocket, he took them out and then all three c/ms went into Eddies Place. At this time Logan went into Macs Place and stayed a short while and then the 3 colored males came out and then Logan came out. On 11 July 1974 there was no car or activity whatsoever. On 12 July 1974 the blue Chevrolet was parked in front of the house on 3rd Avenue and the white Chevrolet was gone. At 10:35 A.M. the white Chevrolet returned home at third avenue. On 12 July 1974 at approximately 10:38 A.M. Logan came out of the house and went across the street and then back to the house with another colored male. Shortly thereafter a wrecker came up to the front of the house and parked and the wrecker driver who was a colored male, Logan and the other colored male talked for a while. At this time we were in a position where we (Det Beni & Officer Dial) could be seen, so we then left.

"On 15 July 1974 at approximately 9:00 A.M. both cars were at the above mentioned residence the white car was parked in the street and the blue car was in the lot next to the above mentioned residence. At this time due to no activity on Broadway and Mulberry the investigation was ceased for a short time. On September 30, 1974 at approximately 9:20 A.M. Detective Frank Beni & Officer W. H. Kirk went by the above mentioned residence and noticed the blue and white Chevrolets in the yard. On 30 Sept 1974 approximately 9:45 A.M. the officers went to Broadway & Mulberry and there was no activity at all. At 10:15 A.M. on 30 Sept. 1974, the officers went to the above mentioned residence and the white Chevrolet was gone. At 11:00 A.M. the officers went back to Broadway & Mulberry and there was still no activity and then the officers left Broadway & Mulberry, and went back to Third Avenue. At 11:15 A.M. on 30 Sept, 1974 a tan 1966 or 67 Chevrolet came to the house and left hurriedly. At 11:20 same date a grey cadillac tag No. ROM 182 pulled into the lot alongside the residence and went into the back door the tag issued to 1962 Cadillac Milton Mitchell, 1488 Pio Nono Avenue. Shortly thereafter a green Chevrolet

tag No. LKX 472, Twiggs County parked on the street and a colored male got out of the car and ran into the above mentioned residence and came out shortly thereafter, there was also a colored male driving the car, the tag issued to: Rich Stephens, Jr., Rt 1 Box 389, Dry Branch, Ga. At 11:28 A.M. a white Oldsmobile parked on the street in front of the above mentioned residence Tag No. RHZ 592 and a colored male got out and went into the above mentioned residence and stayed a short time and then came out and left. At approximately 11:45 A.M. on 30 Sept. 1974, a yellow VW, tag No. CMF 652 occupied by a white male went into the house and stayed for approximately 20 minutes. At approximately 1:00 P.M. the white Chevrolet has not returned. On 2 October 1974, Det Beni made arrangements with a colored female to use their residence for observation and was refused so Det. Beni disguised as an insurance salesman walked up and down Third Avenue, and noticed several elderly c/m and c/f to in to the above mentioned residence with their hand clasped and a brown paper bag in their hand rolled or balled up. Also several of the male and females went thru the driveway next door to the above mentioned residence and went behind the house and went into the rear door of the above mentioned residence and would stay a short while and then leave.

"On 3 October 1974, at approximately 11:10 A.M. a yellow with black top Buick, Tag No. MOF 691 listed to Willie Hollingshed of 1439 Beuna Vista for a 1973 Buick came to the front of the above mentioned residence and a colored male got out and a colored male stayed in the car, the male that got out had a brown paper sack in his right hand and went in, and when he came out shortly thereafter he did not have the sack in his hand and then left.

"Therefore with the information received from the reliable informer and the observation of the officers and the affiant, the affiant firmly believes that there is lottery being played on in the above mentioned residence. Also the automobiles which are listed below. 1962 Cadillac TAG No. ROM 182; 1969 Chevrolet TAG No. LKX 472; 1963 Olds TAG No. RHZ 592; 1973 Volkswagon TAG No. CMF 652; 1964 Chev. TAG No. EIY 379; 1959 Chev. TAG

No. LKP 661. Also all automobiles that come to the above mentioned residence."

The affidavit was dated October 4, 1974, and the warrant was issued at 3:35 p.m. on that date authorizing a search of the premises described, the two Logans and the automobiles. There was no express authority to search any other persons or premises, or automobiles. The search was made on October 7, 1974, at 10:30 a.m. and the return on the warrant was as follows:

"Money belonging to Thelma Logan, $250.00, $43.37, $289.00, $33.02, $54.20, $12.50, a Total of $682.09. Money belonging to Earnest Logan, $3,003.00, $1355.10, $550.00, Total of $4,908.00. Found on Frank Glover $70.25, $90.00, $33.00, $12.15 a total of $205.40 also Bug Ticket. Found on Wilbur Mitchum $26.00, also bug tickets. Found on George Ray Carson $155.80, also bug tickets. Found on Laura Hollingshed $128.89, also bug tickets. A note-book containing phone numbers, papers with numbers. One .38 Smith-Wesson Serial No. K817787 and one Lawman MK III, .357 Magnum, Serial No. J90288. One Burroughs Adding Machine No. P276727D."

The evidence relating to the search follows: The officers entered the described premises through the rear door and no one was there, and they began the search. Very shortly thereafter Thelma Logan entered and was searched and they found money in her possession. They continued to search the premises, and off and on during the search of the premises other persons came into the house, ten in number, including the defendants other than the Logans, and those that had no money or lottery tickets after the search were released. While it was testified that some of the four defendants other than the Logans had lottery tickets in their hands and some had them concealed it does not appear which of these four defendants had lottery tickets in their hands and which had them concealed. The items shown as seized from Hollingshed were items apparently dropped on the floor where she was standing. They were not there before she stood there but were there immediately after she moved from the place where she was standing. There were four officers engaged in the search and seizure. The

Hollingshed item was a bag with numbers and money rolled up in it. All of the searches of the individuals were made for the purpose of finding bug tickets and money and not for the purpose of frisking to ascertain whether weapons were present. Logan was searched after he went toward his automobile to get in at which time the officers escorted him into the house and searched him, finding the money reported. One of the officers when asked if he knew the defendants answered "not by face, by name I did." Then occurred the following question and answer. "Q. But you didn't know that any of them had ever been involved in the bug racket before? A. By name only, not by face."

1. An unreasonable delay before securing a search warrant, after receiving information from an informant, where the probable cause must be based solely on the information given, will cause the invalidity of the warrant because it is based on "stale" information. See, *Fowler v. State,* 121 Ga. App. 22 (172 SE2d 447); *Terry v. State,* 123 Ga. App. 746 (182 SE2d 513); *Gilliam v. State,* 124 Ga. App. 843 (186 SE2d 290); *McMiken v. State,* 127 Ga. App. 66 (192 SE2d 716). However, where as here, based upon the information of the informant a surveillance is carried out for several months and up to one day prior to the securing of the warrant, which surveillance shows an activity and the manner in which it occurs, a coincidence of circumstances, which activity indicates a very probable violation of the lottery law, the activity being a repetitive one and such as would ordinarily occur when a lottery was being carried on (in the manner as previously stated by the informant) as distinguished from a chance occurrence, the "stale" information of the informant is not the sole basis of probable cause. And if these occurrences are such as to indicate the probability of the illegal activity, the violation of the lottery law at a current date, the warrant is valid. In our opinion, the facts contained in the affidavit on the warrant were sufficient to authorize a finding of probable cause for the issuance thereof.

2. The lottery tickets and money allegedly obtained from Hollingshed were not obtained by a search of a person but were found on the floor where she had been standing after she had moved from the spot and which

were not there before she had stood there. The search of the premises being lawful, there is no ground to suppress this evidence.

3. The search of those coming in while the search was going on, not being expressly authorized by the warrant, the right to do so must be shown by the grounds of probable cause (*Wallace v. State,* 131 Ga. App. 204 (205 SE2d 523)), or must have been authorized under the provisions of Section 9 of the Act of 1966 (Ga. L. 1966, pp. 567, 570; Code Ann. § 27-309) which provides that "In the execution of the warrant the person executing the same may reasonably detain or search any person in the place at the time: . . . (b) To prevent the disposal or concealment of any instruments, articles or things particularly described in the warrant." It is our opinion that in view of the surveillance showing a practice of numbers of people gathering at the same place for short periods, such as occurs when tickets and money are brought in, and probable cause to believe the house at 2119 Third Avenue was one of the places for the pick-up, there was ample probable cause to believe those coming to the premises were carrying lottery tickets and money from the sale thereof. We hold, therefore, the search of the individuals entering while the search of the house was going on was lawful.

*Judgment affirmed. Quillian and Clark, JJ., concur.*

Argued May 7, 1975 — Decided September 29, 1975.

*Edward F. Taylor,* for appellants.
*Clarence H. Clay, Jr., Solicitor, John R. Sikes, James M. Wootan, Assistant Solicitors,* for appellee.